**Jeri Lynn THOMPSON, Individually and as Guardian ad Litem for Nicole L. Thompson, a Minor; Nicole Leah Thompson, a Minor; and Joseph Deshetres, Plaintiffs–Appellees,**

v.

**Larry Wayne MAHRE, et al., Defendant,**

**and**

**Michael Steen, Defendant–Appellant.**

**No. 94–16912.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 1996.

Decided April 7, 1997.

Rene Auguste Chouteau, City Attorney, and Patrick C. Wilson, Assistant City Attorney, Santa Rosa, California, for defendant-appellant.

Leroy J. Lounibos, Jr., Lounibos, Lounibos & Tinney, Petaluma, California, for plaintiff-appellee Thompson.

John Houston Scott, Prentice & Scott, San Francisco, California, and Andrew Unetic, Santa Rosa, California, for plaintiff-appellee Deshetres.

Douglas J. Collodel, Esq., Richard H. Nakamura, Jr., Esq., Morris, Polich & Purdy, LLP, Los Angeles, California, for amicus curiae.

Before: ALARCON, KLEINFELD and HAWKINS, Circuit Judges.

KLEINFELD, Circuit Judge:

This is a qualified immunity case arising out of an early morning execution of a search warrant. Two issues arise, the procedure to be followed, and the exigency exception to the knock and announce requirement.

## A. Facts.

Joseph Deshetres, whose house was the object of the search, was a member of a motorcycle gang thought by the police to be violent, and he had a substantial criminal record. The police had probable cause to believe that Deshetres had sold methamphetamine, and would have evidence of his methamphetamine dealing at his house. The search warrant affidavit says that Deshetres had a record of numerous arrests, for narcotics, illegal possession of guns, assault, robbery, and interference with a police officer. The year before the raid on his house, Deshetres was arrested as he robbed a drug dealer with a gun and tried to escape with a hostage.

In the raid that led to the instant case, a large number of police surrounded Deshetres's house at six in the morning. They correctly anticipated that Deshetres and anyone else in the house would be asleep. At the door, an officer hollered that they were police. At the direction of Sergeant Steen, the officer in charge that morning, the officers did not wait long enough so that if Deshetres were going to open the door voluntarily, he could have done so. Instead, the police broke through the door to the house with a battering ram.

Shooting began immediately. Deshetres came out of the bedroom naked, carrying a gun. One of the police shot him. Deshetres did not fire any shots. One officer accidentally shot another police officer. The police also killed the family dog.

Deshetres's girlfriend, Thompson, sat terrified in bed in her T-shirt and panties, holding a baby, while one of the policemen kept a gun pointed at her and told her not to move. Then she was ordered to hand the baby out the window the police officer had broken, and crawl out after it.

Sergeant Steen had decided as the police approached the house not to allow the people in the house time to respond after announcing the police presence. The factor which tipped his judgment was that a white pickup truck drove away from the house as the police approached, so Sergeant Steen thought it likely that Deshetres had been tipped off.

The jury decided in a series of special verdicts that had Sergeant Steen waited another 20 to 23 seconds before ordering forced entry, Deshetres or Thompson would have responded and permitted the Santa Rosa police to enter. As a result of the failure to wait, Sergeant Steen was required to pay Deshetres $82,500 dollars in damages for his being shot and hospitalized nine days and other damages, and $10,000 dollars to Thompson.

## B. Procedure.

The procedural history of this case is complex and obscure. The district court decided on qualified immunity early in the litigation, in accord with *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), and *Act Up!/Portland v. Bagley,* 988 F.2d 868 (9th Cir.1993). Sergeant Steen appealed, and we affirmed. Our unpublished disposition is excerpted in the footnote.[1]

---

1. "This appeal arises out of a rather complex 42 U.S.C. § 1983 action involving forcible entry of a residence used as a motorcycle gang clubhouse. At issue here is solely the question whether the district court erred in denying Sergeant Steen's *motion for summary judgment* based on qualified immunity. *We have jurisdiction of an appeal from an interlocutory order for such review.*

. . . . .

"Before the district court considered Steen's motion for summary judgment, it held an *eviden-*

*tiary hearing* to determine, inter alia, whether the forcible entry, instigated by Sergeant Steen, violated the Fourth Amendment prohibition against unreasonable searches and seizures.

. . . . .

"The district court found that no exigent circumstance excused Sergeant Steen's failure to comply with the knock-notice requirement. There was no objective basis for the police to believe that many people were inside the house prepared to give armed resistance, nor was

We have received an amicus curiae brief in this case from 176 California cities and towns concerned about tort liability for execution of search warrants. The amici urge that the district court erred by taking qualified immunity away from the jury and resolving the facts on summary judgment. Amici cite a Sixth Circuit case, *Kennedy v. City of Cleveland*, 797 F.2d 297 (6th Cir.1986), for the proposition that denial of defendant's motion for summary judgment on qualified immunity means only that the issue goes to trial on the merits, not that qualified immunity is lost.

There are several puzzling things about the procedure described in our previous memorandum disposition. First, ordinarily there is no such thing as an evidentiary hearing, or findings of fact, on a summary judgment motion. Under Federal Rule of Civil Procedure 56(c), a summary judgment may be granted if there is "no genuine issue as to any material fact," but not if there is a genuine issue. Where there is a genuine issue, trial rather than summary judgment is the means of determining what is true. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987). It follows that there is no such thing as a finding of fact on summary judgment. What are sometimes loosely termed "findings" are instead facts as to which there is no genuine issue. *See generally Anderson*, 477 U.S. at 255 & n. 6, 106 S.Ct. at 2513–14 & n. 6.

■ The words used by the lawyers and district judge, such as "evidentiary hearing" and "findings of fact," make the procedure they used sound like an evidentiary hearing on a motion to suppress. But even though lawfulness of a search was the subject of the proceeding, there is no summary judgment analogue to that Federal Rule of Criminal Procedure 12(e) device. In a suppression hearing, the question is admissibility of evidence, ordinarily determined by the court outside the presence of the jury. Fed. R.Evid. 103(c), 104(a). In a section 1983 case, the same evidence is typically considered not with regard to admissibility, but rather with regard to whether a reasonable police officer would have believed his or her conduct to be constitutionally permissible. "[T]he determination whether those facts support an objective belief that probable cause or reasonable suspicion existed is ordinarily a question for the court." *Act Up!*, 988 F.2d at 873. This is a substantive question rather than one of admissibility of evidence. Thus, where there is a genuine issue of fact on a substantive issue of qualified immunity, ordinarily the controlling principles of summary judgment and, if there is a jury demand and a material issue of fact, the Seventh Amendment, require submission to a jury. *See, e.g., Collins v. Jordan*, 102 F.3d

---

there any indication that evidence was being destroyed or that occupants were attempting to escape. The police were positioned to act, however, had any one of these exigencies developed.... The court considered whether the warning [from the white pickup truck driver], without independent evidence of armed resistance or evidence destruction, created exigent circumstances. The court found that the warning was so close in time to the officers' announcement at the front door, that the warning coupled with the few seconds the police waited after their announcement, would have given the plaintiffs no more time to respond to the officers' arrival, than the plaintiffs would have had if the officers had complied with the knock-notice requirement. Therefore, it was not objectively reasonable for Sergeant Steen to believe that the presumed warning from the pickup truck driver, in the absence of any other perceived risk of violence or destruction of evidence, created any sort of exigency.... Based upon the district court's factual findings, which are not clearly erroneous, that conclusion is sound.

. . . . .

"Appellant has not set forth any legal or factual basis to undermine the district court's ruling that Steen was not entitled to summary judgment on the issue of qualified immunity. Accordingly, we affirm. *The result of our affirmance on this interlocutory appeal of the district court's denial of summary judgment motion based upon qualified immunity is to return the qualified immunity issue to the district court for determination on its merits. We express no view on those merits here, nor do we resolve whether the course of future proceedings is limited by an understanding reached by the parties, by any waiver arising from the parties's conduct in prior proceedings, or by any prior ruling of the district court which may obviate the need for further evidentiary proceedings.*"

*Thompson v. Mahre and Steen*, No. 91–15055, 959 F.2d 241, unpublished memorandum, April 2, 1992. (Emphasis added.)

406, 412 (9th Cir.), as amended, slip op. 3053, 3068–69 (1997); *Stivers v. Pierce*, 71 F.3d 732, 749–50 (9th Cir.1995). District courts may in their discretion "sparingly and with great care" take oral testimony under Federal Rule of Civil Procedure 43(e) on a summary judgment motion. 10A Charles A. Wright, et al., *Federal Practice and Procedure* § 2723, at 62 (2d ed.1983). Oral testimony cannot, under Federal Rule of Civil Procedure 56, lead to a finding on a genuinely disputed fact, but only a determination as to which facts are not genuinely disputed. That is probably why the taking of oral testimony on summary judgment is so rare—it would ordinarily be a waste of time.

The procedural aspect of qualified immunity has been problematic to district courts, because of the requirement that qualified immunity be adjudicated as early as possible, ordinarily before trial and substantial discovery, to give the beneficiaries of the doctrine immunity from litigation and not merely from judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) ("a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.... The entitlement is an *immunity from suit* rather than a mere defense to liability.") (emphasis in original).

Recently the Supreme Court offered a clarification which, had it come down a few years earlier, might have precluded the interlocutory appeal in the case at bar. *Johnson v. Jones,* —— U.S. ——, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), holds that a defendant in a civil case, "entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Id.* at ——, 115 S.Ct. at 2159. The Court in *Johnson* affirmed a Seventh Circuit dismissal of an interlocutory appeal by police officers who were denied summary judgment on qualified immunity because of a genuine issue of fact. *Johnson* limits the holding in *Forsyth*, that a denial of summary judgment is immediately appealable. Where the denial determines only a question of evidence sufficiency, that is, what facts a party may or may not be able to prove at trial, the order is not appealable. If there is no genuine issue of fact, and the determination is one of whether certain given facts show a violation of clearly established law, interlocutory appeal remains available under *Mitchell v. Forsyth* ·despite the qualification added by *Johnson v. Jones. Id.* at ——, ——, 115 S.Ct. at 2155, 2159.

■ We agree with amici that denial of a defense motion for summary judgment on qualified immunity merely leaves the issue for trial, and does not destroy the defense. *Johnson v. Jones,* —— U.S. ——, —— – ——, 115 S.Ct. 2151, 2158–59, 132 L.Ed.2d 238 (1995). Only the grant of summary judgment or other pretrial dispositive device can withdraw the issue from trial.

Amici correctly point out that the jury in the case at bar was not given the qualified immunity issue. The district court instructed the jury that it had already determined that Sergeant Steen "violated the applicable knock-notice law when he did not wait a sufficient period of time, under the circumstances, before ordering entry into the residence.... The question for you to determine as to this claim is whether or not the conduct of defendant Steen caused any damage to the plaintiff Deshetres and plaintiff Thompson." Had the district court merely denied Sergeant Steen's motion for summary judgment on qualified immunity, then it would have been mistaken to take the issue away from the jury. Sergeant Steen would have been entitled to have a jury decide whether his conduct fell within the exigency exception to the knock-notice rule.

■ Sergeant Steen did not appeal on the procedural ground urged by amici. We have pored over the record with considerable effort, and determined despite some confusing word usage, what we thought had happened in our previous disposition—denial of a summary judgment motion—and what the amici thought had happened, is not really what happened. Instead, in the course of pretrial proceedings, the parties stipulated to bifurcation and bench trial of the qualified immunity issue. Though the parties and the court loosely termed the ensuing proceeding an "evidentiary hearing" on qualified immunity,

it was a "separate trial of . . . any separate issue" pursuant to stipulation and permitted in the district court's discretion under Federal Rule of Civil Procedure 42(b). Such a separation requires that the court "[p]reserve inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution." *Id.* But the parties stipulated that the "evidentiary hearing" be conducted by the judge without a jury. By stipulating to and participating without objection in this proceeding, Sergeant Steen waived the right to trial by jury of issues of fact relating to the qualified immunity issue under Federal Rule of Civil Procedure 38(d). *See White v. McGinnis,* 903 F.2d 699, 703 (9th Cir.1990) (plaintiff waived his right to jury trial by participating without objection in bench trial). Thus what took place was not a summary judgment denying qualified immunity, but rather a trial on the issue of qualified immunity, to the court without a jury. The district court's findings, therefore, were properly denoted as findings of fact and were not merely determinations of facts not genuinely at issue. *See* Fed.R.Civ.P. 52(a). The district court thus did not make the error claimed by amici.

Because our previous disposition was in substance an appeal from an interlocutory order after trial of the qualified immunity issue, and not from an interlocutory order denying a motion for summary judgment, the question of jurisdiction over the latter type of interlocutory appeal, resolved by *Johnson v. Jones,* does not bear on our earlier disposition. We need not consider whether, at the time of our earlier disposition, lack of a Rule 54(b) determination impaired our jurisdiction. No law of the case issue arises, because our previous disposition left open the issues we resolve today.

### C. Denial of Qualified Immunity.

■ Sergeant Steen argues that he should have been granted judgment as a matter of law under Federal Rule of Civil Procedure 50(a), because there was no "legally sufficient evidentiary basis" for denying him qualified immunity. The standard of review is somewhat difficult to apply. Whether a right is "clearly established" so

that a public official who violated that right would have no qualified immunity is a question of law reviewed *de novo. Elder v. Holloway,* 510 U.S. 510, 516, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994). Findings of fact are ordinarily reviewed for clear error, but application of law to the facts to determine whether on those facts, qualified immunity is established, is reviewed *de novo,* because the determination of qualified immunity on facts not genuinely at issue is for the court. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir.1993). Despite the characterization of the review as *de novo,* however, the party that prevailed at trial is entitled to have the evidence construed in a light most favorable to it, and the question is whether the evidence was so one-sided that one party would have to prevail as a matter of law. *See Air–Sea Forwarders, Inc. v. Air Asia Co.,* 880 F.2d 176, 181 (9th Cir.1989).

Both a California statute, California Penal Code § 1531, and a federal statute, 18 U.S.C. § 3109, provided at the time of the police entry that in this case that a police officer may break into a house to execute a warrant, "if after notice of his authority and purpose he is refused admittance." It is undisputed that Sergeant Steen ordered the break-in without giving notice of a purpose executing a warrant, and without giving the householders, Deshetres and Thompson, an opportunity to permit peaceful entry.

The "knock and announce" requirement is of very ancient common law origin, traceable to a statute of 1275 which itself was "but an affirmance of the common law." *Wilson v. Arkansas,* 514 U.S. 927, ——, 115 S.Ct. 1914, 1917, 131 L.Ed.2d 976 (1995). It is part of the "reasonableness inquiry under the Fourth Amendment," and is not merely a statutory requirement. *Id.* at ——, 115 S.Ct. at 1918.

■ The issue in this case arises out of the exigency exception to the constitutional "knock and announce" requirement. *See Id.* at —— ——, 115 S.Ct. at 1918–19. Where a defendant is "in possession of narcotics, which could be quickly and easily destroyed," and the facts indicate that "he might well have been expecting the police," the special

exigency of preventing destruction of evidence may excuse failure to knock and announce. *Ker v. California,* 374 U.S. 23, 40, 83 S.Ct. 1623, 1633–34, 10 L.Ed.2d 726 (1963). Likewise, where the police officers reasonably believe themselves to be endangered because the defendant had previously expressed willingness to use firearms against police and was known to have them, the exigency exception applies. *United States v. Turner,* 926 F.2d 883, 887 (9th Cir.1991). *See also United States v. Ramirez,* 770 F.2d 1458, 1461 (9th Cir.1985); *United States v. Manfredi,* 722 F.2d 519, 522 (9th Cir.1983).

■ It is undisputed that the officers had probable cause to believe that Deshetres had methamphetamine in the house. That was the basis for the search warrant. If he knew the police were coming, he could flush it down the toilet. It is also undisputed that Sergeant Steen had reason to believe that Deshetres was a career criminal who had once robbed a narcotics dealer with a gun and taken a hostage, and had once been reaching for a gun while being arrested. The police also had reason to think that the driver of the white pickup truck had tipped Deshetres off, so he had additional time to destroy evidence and arm himself.

So far, applicability of the exigency exception seems open and shut. But two courts which know this case better than we do reached the opposite conclusion. The Sonoma County Municipal Court after an eight-day hearing on a motion to suppress, granted the motion and dismissed the charges against Deshetres. The district court after a three-day evidentiary hearing likewise concluded that the exigency exception did not apply. After the fact, it is certainly difficult to justify all the shooting, the accidental shooting of a police officer, the great danger to Thompson and her baby, the shooting of the family dog, and all the destruction in the house, for this methamphetamine arrest. Thompson testified that it was very hard to wake Deshetres up for the police, because he had drunk a pint of whiskey the night before. Although Deshetres did have a gun in his hands when he was arrested, he did not shoot at anyone. The entire risk of an officer being shot (though not destruction of evidence) could have been avoided by calling Deshetres on the phone and besieging the house until he surrendered. In some circumstances a suspect may be more likely to shoot at the police if he thinks he is the subject of a paramilitary attack, than a peaceful search or arrest.

But two findings of fact the district court made compel us, under the controlling authorities, to conclude that the exigent circumstances exception to the knock and announce rule applied. The district court found that "the facts support a reasonable belief that Sergeant Steen's team would be met with armed resistance." Steen knew that Deshetres was housed within, and that he had a history of violent offenses and a reputation for violence. Also, the district court found that "the facts support a reasonable belief that plaintiffs received some warning, albeit a brief one, that police were approaching their residence."

■ Steen's defense does not require him to establish that he was correct in thinking that the police would be met with force or evidence destroyed. All he needs is qualified immunity, which he has if "a reasonable officer could have believed [the forcible entry without announcement and opportunity to comply peaceably] to be lawful, in light of clearly established law and the information the searching officers possessed." *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987); *Washington v. Lambert,* 98 F.3d 1181, 1192 (9th Cir. 1996). This shield "protects mistaken judgment." *Hunter v. Bryant,* 502 U.S. 224, 228–29, 112 S.Ct. 534, 536–37, 116 L.Ed.2d 589 (1991); *Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 70 F.3d 1095, 1098–99 (9th Cir. 1995). The only question before us is whether a reasonable officer could have believed that forcible entry was necessary to protect the officers against armed resistance and protect against destruction of evidence.

Despite our qualms, and the qualms two other courts and a jury have had, about the attack on Deshetres' house, we do not see

how this conclusion can be avoided. The findings of fact of the district court, in the particular circumstances of this case, compel it. Sergeant Steen had reason to believe that Deshetres had armed himself, was a violent person, knew the police were about to enter, might well resist forcibly, and might well flush his methamphetamine down the toilet. In those factual circumstances, the exigency exception applies. We do not suggest that in every narcotics case there is an exception to the knock and announce requirement because of the prevalence of flush toilets in the United States. In this case, Sergeant Steen could reasonably conclude that in light of Deshetres' past and the likelihood that he had been tipped off to the raid, immediate entry was needed to reduce the risk that the police would be met with violent resistance.

This is not to say that Sergeant Steen's judgment was correct. The jury concluded that failure to wait a reasonable time for someone to answer the door caused plaintiffs' damages. After all, Deshetres was never given a chance to respond peaceably; he might well have done so even if he was a violent armed individual in order to prevent violence from engulfing his girlfriend and the baby, and because of the overwhelming force the police had available. Although armed, Deshetres never fired his gun. A tremendous amount of violence was unleashed by the police as a precautionary measure, yet the main reason for the precaution, to prevent a police officer from being shot, was defeated when a police officer was shot by another officer. On the other hand, it may be that the reason Deshetres did not shoot is that one of the officers shot him first. The question on qualified immunity is not whether Sergeant Steen's judgment was mistaken, only whether a reasonable officer could have made the judgment to enter as these officers did in these particular circumstances. He could have. For that reason, Sergeant Steen is entitled to qualified immunity as a matter

of law, based upon the facts found by the district court.

REVERSED.